JAJ:RMT

UNITED STATES DISTRICT COURT   **MISC. 11-403**
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

IN THE MATTER OF AN APPLICATION
OF THE UNITED STATES OF AMERICA
FOR ORDERS AUTHORIZING THE
DISCLOSURE OF LOCATION DATA
RELATING TO MOBILE TELEPHONES
ASSIGNED NUMBERS (347) 535-6911,
(347) 893-0264, (240) 744-2035,
(347) 749-6367, (347) 359-5051
and (347) 570-8672

- - - - - - - - - - - - - - - -X

**FILED UNDER SEAL**

AFFIDAVIT IN SUPPORT
OF APPLICATION

EASTERN DISTRICT OF NEW YORK, SS:

I, Wayne Jacobs, being first duly sworn, hereby depose
and state as follows:

1.   I make this affidavit in support of an application
for search warrants under Federal Rule of Criminal Procedure 41
and 18 U.S.C. §§ 2703(c)(1)(A) for location data for:

a.   a Sprint Nextel mobile telephone assigned the
number (347) 535-6911, associated with ESN 26843545960875261, and
used primarily by HARVEY CHRISTIAN, also known as "Black"
("SUBJECT TELEPHONE 6911");

b.   a Sprint Nextel mobile telephone assigned the
number (347) 893-0264, associated with ESN 26843545960875274, and
used primarily by ANTHONY CHRISTIAN, also known as "Nitty"
("SUBJECT TELEPHONE 0264");

c.   a Sprint Nextel mobile telephone assigned the
number (240) 744-2035, associated with ESN 000828989792300, and

used primarily by ANTHONY BRITT, also known as "N-O" ("SUBJECT TELEPHONE 2035");

        d.    a Sprint Nextel mobile telephone assigned the number (347) 749-6367, associated with IMSI number 26843546011082721, and used primarily by PAUL FORD, also known as "Uncles," "Unks," "Dred" and "Ninja" ("SUBJECT TELEPHONE 6367");

        e.    a Sprint Nextel mobile telephone assigned the number (347) 359-5051, associated with MSID 3475242737, and used primarily by ROBERT JONES, also known as "Rob" ("SUBJECT TELEPHONE 5051"); and

        f.    a Simple Mobile mobile telephone assigned the number (347) 570-8672, associated with MSID 310260742409909, and used primarily by ROBERT FIELDS, also known as "Boy Boy" ("SUBJECT TELEPHONE 8672");

(together, the "SUBJECT TELEPHONES"). The SUBJECT TELEPHONES are described herein and in Attachment A (one for each service provider), and the location information to be seized is described herein and Attachment B (one for each service provider).

        2.    I am a Special Agent of the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such. I have been a special agent for more than seven years and am currently assigned to the C-30 Squad, where I am tasked with investigating violent gangs, as well narcotics trafficking, money laundering and other offenses. As such, I am an

2

investigative or law enforcement officer within the meaning of
Title 18, United States Code, Section 2510(7), that is, an
officer of the United States who is empowered by law to conduct
investigations and to make arrests for offenses enumerated in
Title 18, United States Code, Section 2516. Among other duties,
I am participating in an investigation relating to the
distribution of controlled substances by HARVEY CHRISTIAN, also
known as "Black," ANTHONY CHRISTIAN, also known as "Nitty,"
ROBERT FIELDS, also known as "Boy Boy," ANTHONY BRITT, also known
as "N-O," PAUL FORD, also known as "Uncles," "Unks," "Dred" and
"Ninja," and ROBERT JONES, also known as "Rob" (the "SUBJECT
INDIVIDUALS" or "SUBJECTS"), and others.

      3. During my tenure with the FBI, I have participated
in numerous narcotics investigations during the course of which I
have (a) conducted physical surveillance, including surveillance
of individuals engaged in drug trafficking; (b) executed search
warrants at locations where drugs, drug proceeds and records of
narcotics and money laundering transactions have been found; and
(c) debriefed cooperating drug traffickers. Through my training,
education and experience, I have become familiar with (a) the
manner in which illegal drugs are imported and distributed; (b)
the method of payment for such drugs; and (c) the efforts of
persons involved in such activity to avoid detection by law
enforcement. In addition, I and other FBI special agents

3

participating in this investigation have (a) reviewed and analyzed numerous taped conversations and records of drug traffickers and (b) monitored wiretapped conversations of drug traffickers and reviewed line sheets prepared by wiretap monitors.

       4     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Because the purpose of this affidavit is to limited to demonstrating probable cause for the requested warrants, it does not set forth all of my knowledge about this matter. In addition, when I rely on statements made by others, such statements are set forth in part and in substance unless otherwise indicated.

       5.    Based on the facts set forth in this affidavit, there is probable cause to believe that (a) the distribution and possession with intent to distribute controlled substances, and the use of wire facilities to facilitate the same, (b) conspiracy to do the same, and (c) aiding and abetting these offenses, all in violation of Title 21, United States Code, Sections 841, 843, 846, and Title 18, United States Code, Section 2, have been committed, and are being committed, by the SUBJECT INDIVIDUALS, who are believed to be the primary users of the SUBJECT TELEPHONES, and others. There is therefore probable cause to believe that the location information described in Attachment B

4

will constitute evidence of these criminal violations, and will lead to the identification of other individuals who are engaged in the commission of these offenses with the SUBJECT INDIVIDUALS.

## PROBABLE CAUSE

I. Background

6.    HARVEY CHRISTIAN, also known as "Black" ("H. CHRISTIAN" or "HC"), ANTHONY CHRISTIAN, also known as "Nitty" ("A. CHRISTIAN"), ROBERT FIELDS, also known as "Boy Boy" ("FIELDS" or "RF"), ANTHONY BRITT, also known as "N-O" ("BRITT"), PAUL FORD, also known as "Uncles," "Unks," "Dred" and "Ninja" ("FORD"), and ROBERT JONES (also known as "Rob") ("JONES"), together with others, have been involved in the sale and distribution of crack cocaine in the North Shore area of Staten Island for at least the past three months (the "CHRISTIAN BROTHERS ENTERPRISE").  At any given time, members of the CHRISTIAN BROTHERS ENTERPRISE maintain one or more "work phones," which customers use to contact them or their workers so that customers can arrange to either pick up drugs or have drugs delivered by members of the conspiracy.  Further, members of the CHRISTIAN BROTHERS ENTERPRISE exercise control and influence over other drug crews in the greater Park Hill neighborhood of Staten Island area through the use and threat of violence.    H. CHRISTIAN, A. CHRISTIAN and FIELDS are all members of the Bloods street gang.

5

7.   Between January and March 2011, confidential informants ("CIs") under the supervision of the New York City Police Department and the FBI made three controlled drug purchases from JONES and H. CHRISTIAN.  Prior to each of those purchases, the CIs made consensually recorded telephone calls to H. CHRISTIAN via SUBJECT TELEPHONE 6911.  The drugs purchased on each of those occasions field-tested positive for cocaine and appeared to be crack cocaine.

8.   On April 4, 2011, pursuant to March 31, 2011 orders from the Honorable Rosylnn R. Mauskopf, United States District Judge for the Eastern District of New York, agents began monitoring calls over SUBJECT TELEPHONE 6911.  The government renewed the wiretap on that phone on May 5, 2011 and began monitoring a telephone belonging to FELIX GRANT, also known as "Pook" and "Pookie" ("GRANT" or "FG"), who was determined to be a cocaine supplier for the CHRISTIAN BROTHERS ENTERPRISE.[1]  On May 18, 2011, the government began monitoring a separate mobile phone that belongs to FIELDS.  Based on calls intercepted over these three telephones during that past two months and as recently as last week, there is probable cause to believe that the SUBJECT

---

[1] On June 2, 2011, a grand jury in the Eastern District of New York returned an indictment charging GRANT in a cocaine and cocaine base distribution conspiracy.  In addition, on May 31, 2011, GRANT was arrested by state authorities in possession of approximately one kilogram of powder cocaine and approximately $17,000 cash.

6

TELEPHONES are being used to orchestrate the distribution of narcotics on the North Shore of Staten Island and elsewhere.

9.   On June 6, 2011, a grand jury in the Eastern District of New York returned an indictment charging the SUBJECT INDIVIDUALS and others with conspiring to possess with intent to distribute cocaine and cocaine base.

## II. SUBJECT TELEPHONE 6911

10.   We have determined that H. CHRISTIAN is the primary user of SUBJECT TELEPHONE 6911 based on information from a confidential source ("CI-1") and based on numerous intercepted calls during the past two months over SUBJECT TELEPHONE 6911 corroborated by surveillance of H. CHRISTIAN and others.[2]   We have also intercepted numerous calls over SUBJECT TELEPHONE 6911

---

[2] CI-1 previously worked primarily with the New York City Police Department ("NYPD").  He/she has provided information to NYPD investigators intermittently for more than nine years, in return for cash payments and assistance with achieving favorable dispositions in prior arrests.  I know that CI-1 is reliable because I have been informed that he/she has provided reliable information in the past that was relied upon to obtain multiple search warrants which resulted in the seizure of narcotics and firearms.  However, CI-1 was arrested recently for fraud.  At the time CI-1 was arrested, CI-1 had in his/her possession a substance believed to be crack cocaine.  CI-1 has a substantial criminal history.  Nevertheless, we believe CI-1 is a reliable source because CI-1 has previously provided accurate information, and because, as set forth in great detail below, CI-1's interactions with the targets of this investigation have typically been monitored and recorded by law enforcement. Notably, however, CI-1 appears to have been intercepted over SUBJECT TELEPHONE 6911 attempting to negotiate the sale of crack cocaine.  Because of the sensitivity of the investigation, we have not confronted CI-1 regarding his recent apparent criminal activity.

wherein H. CHRISTIAN discussed with others the sale and purchase of crack cocaine.

      a.  On April 20, 2011, H. CHRISTIAN used SUBJECT TELEPHONE 6911 to call GRANT at 347-286-2057 [CALL #13262 (HC)]. During that call, based on my training, experience, and having monitored numerous other calls between those individuals, I believe H. CHRISTIAN and GRANT were coordinating H. CHRISTIAN's return to GRANT of approximately 65 grams of low-quality crack cocaine to be exchanged for higher-quality drugs.  During that call, the following exchange occurred:[3]

> HC: YO, WHAT'S UP?  MY MAN, ROB, YOU KNOW ROB, RIGHT?
>
> FG: HUH?
>
> HC: MY MAN, ROB.  YOU KNOW, THAT LITTLE DUDE (U/I)?
>
> FG: WHAT?
>
> HC: . . . THE LITTLE . . .
>
> FG: WHICH ONE?
>
> HC: ROB.  USED TO LIVE IN THE (U/I). . .
>
> FG: USED TO LIVE (U/I).  USED TO BE OVER THERE ON BURKS STREET?
>
> HC: YEAH THE (U/I) LITTLE NIGGA.
>
> FG: YEAH, YEAH.  I KNOW WHO YOU TALKIN' ABOUT.

---

[3] All quoted excerpts are based agents' having listened to the calls several times, but final transcripts have not yet been prepared.  "U/I" stands for "unintelligible."

HC: HE ABOUT TO COME SEE YOU IN A (U/I).

FG: ALRIGHT, HE GOT THE DRUGS?

HC: YEAH.

FG: ALRIGHT, WHAT YOU GIVE HIM, 6-5 YOU SAID? HELLO?

HC: YEAH.

b.      On May 23, 2011, H. CHRISTIAN used SUBJECT TELEPHONE 6911 to make an outgoing call to GRANT [CALL #24705 (HC)].  During that call, in sum and substance, H. CHRISTIAN advised GRANT that he and FIELDS wished to purchase and split evenly a quantity of cocaine from GRANT.  FIELDS then took the phone from H. CHRISTIAN and confirmed that FIELDS and H. CHRISTIAN wished to split a quantity of crack cocaine.  GRANT then agreed.

c.      On May 28, 2011, H. CHRISTIAN used SUBJECT TELEPHONE 6911 to receive an incoming call from FORD [CALL #27195 (HC)], wherein, based on my training and experience, H. CHRISTIAN and FORD appeared to be discussing the quality of drugs that H. CHRISTIAN had purchased from a supplier that FORD had helped locate.  During that same call, H. CHRISTIAN asked FORD, in sum and substance, whether he could exchange the "moist stuff" for the "dry stuff," and FORD responded that ~~H. CHRISTIAN~~ FORD believed H. CHRISTIAN would be able to do that.

9

III. SUBJECT TELEPHONE 0264

11.  We have determined that A. CHRISTIAN is the primary user of SUBJECT TELEPHONE 0264 because that phone number was found stored on the cellular phone of an associate of A. CHRISTIAN and H. CHRISTIAN who was previously placed under arrest, and based on intercepted calls wherein others indicated that they were preparing to call "Nitty" and then subsequently called SUBJECT TELEPHONE 0264.  Based on numerous intercepted communications, surveillance and information from CI-1, A. CHRISTIAN is a member of the CHRISTIAN BROTHERS ENTERPRISE who assists H. CHRISTIAN and other co-conspirators in the sale of drugs.  We have intercepted numerous calls that indicate A. CHRISTIAN uses SUBJECT TELEPHONE 0264 to discuss drug transactions.

a.  On May 18, 2011, A. CHRISTIAN used SUBJECT TELEPHONE 0264 to make an outgoing call to H. CHRISTIAN on SUBJECT TELEPHONE 6911 [CALL #22930 (HC)].  During that call, in sum and substance, A. CHRISTIAN told H. CHRISTIAN that A. CHRISTIAN needed "four bills" and repeatedly mentioned "B-Realz," a previously intercepted drug dealer named JAMELLE HARPER.  Based on my training and experience, it appears during this call that A. CHRISTIAN was informing H. CHRISTIAN that he wished to purchase a quantity of drugs.  This interpretation was confirmed in a later call intercepted that same day between H. CHRISTIAN

10

using SUBJECT TELEPHONE 6911 and A. CHRISTIAN on SUBJECT TELEPHONE 0264 [CALL #22936 (HC)]. During that call, in sum and substance, H. CHRISTIAN and A. CHRISTIAN had a discussion that related to crack cocaine prices.

b. On May 27, 2011, A. CHRISTIAN used SUBJECT TELEPHONE 0264 to make an outgoing call to H. CHRISTIAN on SUBJECT TELEPHONE 6911 [CALL #26642 (HC)]. During that call, in sum and substance, A. CHRISTIAN indicated that he was trying to finish selling his remaining supply of drugs and stated, "There is too much work and not enough profit to show for it."

IV. SUBJECT TELEPHONE 2035

12. We have determined that BRITT is the primary user of SUBJECT TELEPHONE 2035 based on surveillance wherein agents called SUBJECT TELEPHONE 2035 and BRITT was observed appearing to answer that phone. Based on numerous intercepted communications, BRITT is an associate of H. CHRISTIAN and FIELDS who both assists H. CHRISTIAN and others in finding drug suppliers and who appears to purchase quantities of drugs for resale.

a. On May 18, 2011, BRITT used SUBJECT TELEPHONE 2035 to receive an incoming call from FIELDS [CALL #75 (RF)]. During that call, FIELDS advised BRITT, in sum and substance, that FIELDS had a "trap phone" in addition to his regular phone. Based on my training and experience, a "trap phone" is a "work phone" -- that is, a phone used nearly exclusively to receive

11

calls from individuals interested in purchasing drugs.  During this call, BRITT also advised FIELDS, in sum and substance, that there were many police officers in the area.

b.   On May 25, 2011, BRITT used SUBJECT TELEPHONE 2035 to make an outgoing call to GRANT [CALL #4725 (FG)].  During that call, BRITT asked GRANT, in sum and substance, if GRANT was "ready," and GRANT advised that he was pulling something out of the "frying pan," and that "this shit is official."  Based on my training and experience, I believe that during this call, BRITT was asking GRANT whether GRANT had drugs ready for sale, and GRANT responded that he was finishing cooking crack cocaine and that the crack cocaine was of very high quality.

c.   In intercepted calls on May 26, 2011, BRITT discussed with H. CHRISTIAN and FIELDS the possibility of robbing GRANT after placing a large drug order with him.  For example, BRITT told H. CHRISTIAN in sum and substance during a call on that date [CALL #25936 (HC)] that BRITT believed GRANT was a "meatball" and that GRANT was going to "do [GRANT] dirty."  BRITT also indicated during that call that he hoped to collect between "two and three hundred" from GRANT, referring, based on my training and experience, to between 200 and 300 grams of cocaine.

V. SUBJECT TELEPHONE 6367

13.   We have determined that FORD is the primary user of SUBJECT TELEPHONE 6367 based on information from another

12

confidential informant ("CI-2").[4]  Based on numerous intercepted communications, FORD is an associate of the CHRISTIAN BROTHERS ENTERPRISE who helps members locate sources of drugs.

a.   On May 18, 2011, FORD used SUBJECT TELEPHONE 6373 to receive an incoming call from H. CHRISTIAN on SUBJECT TELEPHONE 6911 [CALL #22974(HC)].  During that call, FORD and H. CHRISTIAN discussed, in sum and substance, who had crack cocaine available for sale and the quality of that crack cocaine.  H. CHRISTIAN advised FORD that he had recently been buying drugs from the same person, and H. CHRISTIAN asked whether certain drugs FORD described were available for $35 per gram.

b.   As set forth in greater detail above in paragraph 10(c), on May 28, 2011, FORD used SUBJECT TELEPHONE 6367 to communicate with H. CHRISTIAN about the quality of drugs that H. CHRISTIAN had recently purchased.

VI. SUBJECT TELEPHONE 5051

14.  We have determined that JONES is the primary user of SUBJECT TELEPHONE 5051 based on information from CI-1 and calls intercepted over SUBJECT TELEPHONE 6911.  Based on numerous intercepted communications, JONES formerly worked directly for H. CHRISTIAN, serving drugs to others and collecting money at his

---

[4] CI-2 is currently in custody charged with possession of crack cocaine with intent to distribute and numerous weapons charges.  He has met and spoken with agents in the hopes of receiving a favorable disposition to those charges.  His case is currently pending.

direction and on his behalf. However, within the past month, H. CHRISTIAN and JONES had a falling out and JONES appears to no longer work for H. CHRISTIAN. During the course of monitoring SUBJECT TELEPHONE 6911, we have intercepted numerous calls between JONES and H. CHRISTIAN discussing how much crack cocaine JONES had remaining for sale and how much money he had collected for H. CHRISTIAN through drug sales.

        a.    On April 22, 2011, JONES used SUBJECT TELEPHONE 5051 to make an outgoing call to H. CHRISTIAN on SUBJECT TELEPHONE 6911 [CALL #13931 (HC)]. During that call, H. CHRISTIAN asked JONES how many "50s" he had left. H. CHRISTIAN also asked JONES how big the "50s" looked. JONES advised H. CHRISTIAN, in sum and substance, that an individual JONES referred to as "Trini" wanted 50s, and H. CHRISTIAN instructed JONES to give "Trini" "dubs."[5]

        b.    On April 30, 2011, JONES used SUBJECT TELEPHONE 5051 to receive an incoming call from H. CHRISTIAN on SUBJECT TELEPHONE 6911 [CALL #16847 (HC)]. During that call, JONES informed H. CHRISTIAN, in sum and substance, that JONES had "the phone," but no one had been calling, apparently referring to the "work phone" that JONES answers for H. CHRISTIAN. JONES

---

[5] Based on my training and experience, "dubs" or "20(s)" refers to a bag of approximately .5 grams of crack cocaine, which is sold for $20, and "50(s)" refers to a bag of approximately 1.2 grams of crack cocaine, which is sold for $50.

further stated, in sum and substance, that he had made "277"
earlier, apparently referring to $277.  JONES then told H.
CHRISTIAN, in sum and substance, that all JONES had were "50s,"
and H. CHRISTIAN responded, in sum and substance, that JONES
should make some "dubs."

VII. SUBJECT TELEPHONE 8672

15.  During the past two months, based on intercepted
communications over SUBJECT TELEPHONE 6911, we believe FIELDS has
used at least three mobile phones and appears to have
discontinued the use of at least two of those phones after only a
few weeks.  From May 18, 2011 through May 31, 2011, we
intercepted numerous calls over a mobile phone used by FIELDS[6]
with the number (347) 278-4154 (the "4154 TELEPHONE") relating to
narcotics.

a.  On May 19, 2011, FIELDS used the 4154
TELEPHONE to make an outgoing call to GRANT [CALL #94 (RF)].
During that call, the following exchange occurred:

RF: DID YOU EVER SAVE THAT FOR ME OR DID HE
HAVE TO GET RID OF IT?

---

[6] We identified the 4154 TELEPHONE as belonging to
FIELDS in part because on numerous occasions, H. CHRISTIAN and
others indicated that they were going to call "Boy Boy" and then
subsequently dialed that phone, and "Boy Boy" is a known alias
for FIELDS, based on information provided by CI-1 and others.  In
addition, on May 23, 2011, NYPD surveilled FIELDS and H.
CHRISTIAN meeting with GRANT subsequent to intercepting calls
over the 4154 TELEPHONE regard that meeting.

15

FG: I TRIED TO CALL YOU . . . I HAVE LIKE
40-45 OR SOME SHIT LIKE THAT.  WANT IT?

RF: SAME SHIT RIGHT?

FG: SAME SHIT.

RF: YEAH YEAH I'LL TAKE THAT.

FG: ALIGHT WHEN YOU GOING TO BE READY?

RF: UM . . . I'LL CALL YOU . . . IT WILL
PROBABLY BE LIKE . . . IN LIKE THE NEXT 20
MINUTES OR SO.

FG: ALRIGHT THEN I'LL BE WAITING FOR YOU.

RF: ALRIGHT COOL.

Based on my training and experience, during this conversation,
FIELDS agreed to purchase approximately 45 grams of cocaine from
GRANT.

     b.  On May 29, 2011, FIELDS used the 4154
TELEPHONE to receive an incoming call from A. CHRISTIAN on
SUBJECT TELEPHONE 0264 [CALL #1328 (RF)].  During that call, A.
CHRISTIAN advised FIELDS, in sum and substance, that he was
"fixing up something" and that they should meet.  Based on my
training and experience, I believe that FIELDS was advising A.
CHRISTIAN in this call that he was preparing drugs for sale.

     16.  On or about May 31, 2011, the account associated
with the 4154 TELEPHONE was suspended.  However, on multiple
occasions since that date, we have intercepted calls between
SUBJECT TELEPHONE 8672 and SUBJECT TELEPHONE 6911 [e.g., CALL
30157 (HC)], and I believe that the individual using SUBJECT

16

TELEPHONE 8672 during those calls is FIELDS.  Thus, it appears
FIELDS has switched to a new phone.  My belief is based on my
familiarity with FIELDS' voice developed in having intercepted
dozens of calls over the 4154 TELEPHONE during the past month, as
well as prior consensually recorded calls made by confidential
informants to FIELDS under my supervision during the past year.

VIII.    LAW ENFORCEMENT APPLICATION OF REQUESTED INFORMATION

       17.  Based on my training and experience, I know that
Sprint Nextel and Simple Mobile can collect E-911 Phase II data
about the locations of the SUBJECT TELEPHONES by, inter alia,
initiating a signal to determine the locations of the SUBJECT
TELEPHONES on the provider's network or with such other reference
points as may be reasonably available.

       18.  Based on my training and experience, I know that
Sprint Nextel and Simple Mobile can collect prospective cell-site
data about the SUBJECT TELEPHONES.

       19.  Based on my training and experience, the requested
location information for mobile phones can be used to aid agents
in locating and surveilling targets as they move from one
location to another and identify the location of coconspirators
and stash houses.

17

## AUTHORIZATION REQUEST

20.   Based on the foregoing, I request that the Court issue the proposed search warrants, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

21.   I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrants has been completed.   This delay is justified because there is reasonable cause to believe that providing immediate notification of either warrant may have an adverse result, as defined in 18 U.S.C. § 2705.   Providing immediate notice to the subscribers or users of the SUBJECT TELEPHONES would seriously jeopardize the ongoing investigation, as such disclosure would give the targets of the investigation an opportunity to destroy evidence, harm or threaten victims or other witnesses, change patterns of behavior, notify confederates, and flee from and evade prosecution.

22.   I further request that the Court direct Sprint Nextel and Simple Mobile (the "service providers") to disclose to the government any information described in Attachment B that is within its possession, custody or control.   I also request that the Court direct the service providers to furnish the government all information, facilities and technical assistance necessary to

18

accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the service providers' services, by, _inter alia_, initiating a signal to determine the locations of the SUBJECT TELEPHONES on the service providers' networks or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the service providers for reasonable expenses incurred in furnishing such facilities or assistance.

23. I further request that the Court authorize execution of the warrants at any time of day or night, owing to the potential need to locate the SUBJECT TELEPHONES outside of daytime hours.

24. I further request that the Court order that all papers in support of this application, including the affidavit and search warrants, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation. Disclosure of this application and these orders would seriously jeopardize the ongoing investigation, as such a disclosure would give the targets of the investigation an opportunity to destroy evidence, harm or threaten victims or other witnesses, change

patterns of behavior, notify confederates and flee from or evade

prosecution.

Dated:     Brooklyn, New York
           June 7, 2011

                                    _____
                                    WAYNE JACOBS
                                    Special Agent
                                    Federal Bureau of Investigation

Sworn to before me the 7th day of June, 2011

_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A
(Sprint Nextel)

### Property To Be Searched

1.    Information about the location of the following mobile telephones (the "SUBJECT TELEPHONES") that is within the possession, custody or control of Sprint Nextel, including information about the location of the phones if they are subsequently assigned a different call number:

a.    Sprint Nextel mobile telephone assigned the number (347) 535-6911, associated with ESN 26843545960875261 and used primarily by HARVEY CHRISTIAN, also known as "Black";

b.    a Sprint Nextel mobile telephone assigned the number (347) 893-0264, associated with ESN 26843545960875274, and used primarily by ANTHONY CHRISTIAN, also known as "Nitty";

c.    a Sprint Nextel mobile telephone assigned the number (240) 744-2035, associated with ESN 000828989792300 and used primarily by ANTHONY BRITT, also known as "N-O";

d.    a Sprint Nextel mobile telephone assigned the number (347) 749-6367, associated with IMSI number 26843546011082721 and used primarily by PAUL FORD, also known as "Uncle," "Unks," "Dred" and "Ninja"; and

e.    a Sprint Nextel mobile telephone assigned the number (347) 359-5051, associated with MSID 3475242737, and used primarily by ROBERT JONES.

## ATTACHMENT B
(Sprint Nextel)

### Particular Things to be Seized

All information about the location of the SUBJECT TELEPHONES described in Attachment A for a period of thirty (30) days, during all times of day and night. "Information about the location of the SUBJECT TELEPHONES" includes all available E-911 Phase II data, GPS data, latitude-longitude data derived through the use of a cellsite emulator or otherwise, and other precise location information, as well as all data about which cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., 120-degree face of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, the "Location Information") is within the possession, custody, or control of Sprint Nextel, Sprint Nextel is required to disclose the Location Information to the government. In addition, Sprint Nextel must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint Nextel's services, including by initiating a signal to determine the location of the SUBJECT TELEPHONES on Sprint Nextel's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint Nextel for reasonable expenses incurred in furnishing such facilities or assistance.

To the extent that the Location Information includes tangible property, wire or electronic communications (as defined in 18 U.S.C. § 2510), or stored wire or electronic information, there is reasonable necessity for the seizure. See 18 U.S.C. § 3103a(b)(2).

**ATTACHMENT A**
(Simple Mobile - In a partnership with T-Mobile)

<u>Property To Be Searched</u>

1.   Information about the location of the following mobile telephone (the "SUBJECT TELEPHONE") that is within the possession, custody or control of Simple Mobile, including information about the location of the phone if it is subsequently assigned a different call number:

a.   a Simple Mobile mobile telephone assigned the number (347) 570-8672, associated with MSID 310260742409909, and used primarily by ROBERT FIELDS, also known as "Boy Boy".

**ATTACHMENT B**
(Simple Mobile - In a partnership with T-Mobile)

Particular Things to be Seized

All information about the location of the SUBJECT
TELEPHONE described in Attachment A for a period of thirty (30)
days, during all times of day and night.  "Information about the
location of the SUBJECT TELEPHONE" includes all available E-911
Phase II data, GPS data, latitude-longitude data derived through
the use of a cellsite emulator or otherwise, and other precise
location information, as well as all data about which cell towers
(i.e., antenna towers covering specific geographic areas) and
sectors (i.e., 120-degree face of the towers) received a radio
signal from the cellular telephone described in Attachment A.

To the extent that the information described in the
previous paragraph (hereinafter, the "Location Information") is
within the possession, custody, or control of Simple Mobile,
Simple Mobile is required to disclose the Location Information to
the government.  In addition, Simple Mobile must furnish the
government all information, facilities, and technical assistance
necessary to accomplish the collection of the Location
Information unobtrusively and with a minimum of interference with
Simple Mobile's services, including by initiating a signal to
determine the location of the SUBJECT TELEPHONE on Simple
Mobile's network or with such other reference points as may be
reasonably available, and at such intervals and times directed by
the government.  The government shall compensate Simple Mobile
for reasonable expenses incurred in furnishing such facilities or
assistance.

To the extent that the Location Information includes
tangible property, wire or electronic communications (as defined
in 18 U.S.C. § 2510), or stored wire or electronic information,
there is reasonable necessity for the seizure.  See 18 U.S.C. §
3103a(b)(2).